IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEVORA FISHER,
By her Guardian, Sheila Fisher, )
)
Plaintiff, )
)
v. ) 06 C 4405
)
BARRY S. MARAM, ) Judge Ronald A. Guzmán
)
Director, Illinois Department of )
Healthcare an Family Services )
)
)
Defendant. )

# MEMORANDUM OPINION AND ORDER[1]

Devora Fisher alleges that she suffers from multiple complex disabilities which require twenty-four-hour skilled nursing care in that she is completely dependent on others for all of her essential life needs. Plaintiff suffers from a congenital condition known as corpus callosum that involves a missing connection between the two hemispheres of her brain. The results are severe developmental delays, frequent and prolonged seizures throughout the day, difficulty breathing which requires intervention due to central apnea, and cerebral palsy. She lives at home with her parents and has been receiving state aid through the Illinois Medicaid program since 1989.

---

[1] The Court issued its Temporary Restraining Order (TRO) on August 25, 2006. This Memorandum Opinion and Order issues for the purpose of explaining the bases for the court's TRO in a more thorough manner than was possible at the time that the TRO issued.

According to plaintiff, federal Medicaid law allows for the option of providing home and community-based services in lieu of institutionalization through "waiver" programs approved by the Department of Health and Human Services (HHS). Such programs must be cost-neutral (the average cost of providing care for program participants in the home or community must not exceed the estimated average cost of institutional care which they would require. 42 U.S.C. § 1396n(c)(2)(D), 42 C.F.R. § 441.302(e)). The Secretary of HHS may grant the waivers of specified requirements that are otherwise applicable to state Medicaid plans pursuant to 42 U.S.C. § 1396n(c)(3). Such waivers have been approved by HHS for an Illinois plan for medically fragile/technology dependent (MF/TD) children. It is under this program that Devora's home services payments are alleged to have been provided. A similar Illinois Medicaid waiver program approved by the Secretary of HHS for adults is known as the Home Services Program for Adults with Disabilities (Adult Home Services Waiver) (89 Ill. Admin. Code §§ 676.10(a), 676.30(j), 682.100).

Devora has been notified by the Illinois Department of Health Care and Family Services (HFS) that when she reaches twenty-one (on August 28, 2006) her home services rate will be reduced by more than two-thirds. She claims that under this rate she will no longer receive the constant skilled nursing care necessary to enable her to remain in her home and will be forced to move into a hospital, a more dangerous environment (due to her fragile medical condition), the cost of which will greatly exceed the $21,650 per month she is receiving from Medicaid at the present time. This, Devora claims, would constitute unlawful discrimination under Title II of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Devora has filed a complaint seeking injunctive relief to prevent HFS from reducing the level of nursing and other home services currently provided to her, which she maintains are necessary to prevent a more costly, more dangerous and more restrictive institutionalization, the alternative to which she is entitled under the Illinois Medicaid plan.

The Court of Appeals for the Seventh Circuit faced a similar issue in *Radaszewski v. Maram*, 383 F.3d 599, 610-15 (7th Cir. 2004). Because the allegations and issues therein appear to be parallel to those posed by the case at bar, the Court undertakes a detailed examination of that opinion. The allegations in that case were that Eric Radaszewski, a minor, required, since the age of thirteen, around-the-clock medical care in order to survive. The Illinois Department of Public Aid (now HFS) provided funding through a Medicaid program for children that enabled Eric to receive sixteen hours of private-duty nursing care at home each day until he reached the age of twenty-one. After turning twenty-one, Eric was no longer eligible to participate in the program. Illinois has a separate program providing at-home-care for adults who would otherwise have to be cared for in institutions. However, funding under that program is capped at a level that is insufficient to pay for the extent of private-duty nursing that Eric would need in order to remain at home. Thus, the allegations in *Radaszewski* are essentially the same as those in the case at bar. Although the state in the instant case argues that Devora is receiving private-duty nursing care via a different program, the Court finds that the age-qualifier for both programs is identical and thus, it is essentially a distinction without a difference.

The *Radaszewski* court noted that in addition to the services provided in their basic Medicaid plans, states may seek HHS approval to provide home and community-based services to individuals who would otherwise require institutional care. The HHS Secretary enjoys "waiver" authority which empowers him to waive certain Medicaid requirements that would otherwise constrain a state's ability to offer these services, *e.g.*, service limitations and financial eligibility criteria. HHS may issue such waivers permitting a state to offer these services only to individuals who need them in order to avoid institutionalization. 42 U.S.C. § 1396n(c)(1). In seeking such waivers from HHS, the State must certify that the program is cost-neutral. Eric qualified for the same MF/TD children waiver program as Devora, the plaintiff in the instant case. The MF/TD children program provides for private-duty shift nursing and respite care in the recipient home. The amount of services which a person may receive under this program is determined by reference to the cost of that same level of care in a skilled pediatric facility or a hospital. 89 Ill. Admin. Code § 140.645(c)(3). The level of care HFS authorized for Eric was determined by estimating the cost of care Eric required at a medical facility. The same is true for the Adult Home Services Waiver except that this program is subject to a Service Cost Maximum. After the state made a seemingly complex calculation involving a "Determination of Need" score and "exceptional care rate" determination, Eric was found to be eligible for $4,593.00 per month in Medicaid payments to his health care providers. The estimated cost of maintaining Eric's at-home care twenty-four hours per day was between $15,000.00 and $20,000 per month. However, the State maintained it was not authorized to pay for at-home medical care in excess of what it would cost to provide exceptional care for Eric in a skilled nursing facility. Therefore, if such funding

was insufficient to provide for Eric's care at home, then he would have to move to an institutional setting in order to receive care. The state determined that Eric could be adequately cared for in a nursing home facility.

After an administrative grievance hearing with the Illinois Department of Public Aid (now HFS), a hearing officer made the following determinations: 1) Eric would be at risk of danger if he should be placed in a nursing home; 2) Eric needed substantial one-on-one nursing care to survive; 3) he was medically fragile, prone to infections, immobilized, catheterized and relied on oxygen; 4) a registered nurse was required to look for problems before they became "full-blown and he crashed"; 5) his immunological responses were severely compromised such that skilled nursing care was a question of survival and not a question of merely doing well; and 6) placing Eric in a nursing home facility would result in Eric being seriously medically compromised, which would lead to many hospitalizations. The Director of the Illinois Department of Public Aid made the following determination: "I find that the Rules set forth do not allow the HSP program [Adult Home Services Waiver Program] to pay greater than the SCM [Service Cost Maximum] at the unexceptional care rate in any case." *Radaszewski*, 383 F.3d at 604 (citing *In re Appeal of Eric Radaszewski*, Appeal No. 00-019688-HSP, Final Administrative Decision (IDPA Aug. 18, 2000)). Eric then filed a complaint for declaratory and injunctive relief asserting that a reduction in the level of private-duty nursing provided to him at home would constitute a violation of the federal Medicaid statute as well as a deprivation of due process in violation of the Fourteenth Amendment.

In December 2000, Eric filed suit against the Illinois Department of Public Aid and sought injunctive relief compelling the Department to fully fund the cost of the private-duty nursing care he required in order to remain at home. The complaint was based solely on state law theories of relief. A preliminary injunction was entered in state court. Nearly one year later, the state court granted Eric leave to file a supplemental complaint which added, *inter alia*, claims under Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. After removal, the district court remanded the state-law claims, dismissed Eric's ADA claim against the Director as barred by the Eleventh Amendment, and entered a judgment on the pleadings in favor of the state on the Rehabilitation Act claim. The district court reasoned that the state makes at-home, private-duty nursing services available to disabled individuals under the age of twenty-one, but that no one over the age of twenty-one, disabled or not, received such services through the Illinois Medicaid program. Thus, the district court held that Eric was seeking to compel the state to provide services that it did not otherwise provide, and this exceeded the scope of the state's duty under the ADA and the Rehabilitation Act. On appeal, the Seventh Circuit determined that under *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 374 n. 9 (2001), and *Brueggeman ex rel. Brueggeman v. Blagojevich*, 324 F.3d 906, 912-13 (7th Cir. 2003), Eric's ADA suit against the Illinois Director of Public Aid was not barred by the Eleventh Amendment. The appellate court thus proceeded to determine the merits of Radaszewski's ADA and Rehabilitation Act claims. *Radaszewski*, 383 F.3d at 606.

The *Radaszewski* court began its ADA claim analysis with a citation to 42 U.S.C. § 12132:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

*Id.* at 607. 42 U.S.C. § 12131(2) defines a qualified individual with a disability as one who, "with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Further, 28 C.F.R. § 35.130(d) provides that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." Under this integration mandate, an agency must make such modifications as are reasonable in order to avoid unduly segregating the disabled, but need not make modifications which would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7). The ADA's integration regulation is modeled after a similar anti-discrimination provision in the Rehabilitation Act, 29 U.S.C. § 794(a), and its regulations, 28 C.F.R. § 41.51(d). Neither law requires that an agency accommodate a disabled person when the proposed accommodation would impose an "undue hardship" on the agency. In *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597-603 (1999), the U.S. Supreme Court, after considering these regulations, determined that "unjustified institutional isolation" of a disabled individual receiving medical care from a state amounts to an actionable form of discrimination under Title II even in the absence of

traditional proof of the disabled person's being treated differently from a similarly situated nondisabled person.  Thus, although the state is not required to provide any particular level of services, whatever level of services the state does provide must adhere to this integration requirement.

The *Radaszewski* court concluded that Eric easily met the first two requirements of *Olmstead*, *i.e.*, he could be cared for appropriately at home, and neither he nor his family oppose at-home care.  As to the third condition, the state's ability to reasonably accommodate community-based care for Eric, the parties were at odds.  Eric maintained that at-home, private-duty based care was actually less costly than equivalent institutionalized care. The state, on the other hand, argued that it was not required to create new services in order to enable a person entitled to institutionalized care to live in a more integrated setting.  Eric required one-on-one, private-duty nursing care.  Under the state program, the only persons entitled to that type of care are persons under the age of twenty-one, who may receive such services under the MS/TD.  Funding for private-duty nursing is also available under the Adult Home Services Waiver program, but at a level no higher than the exceptional care rate, which in this case would permit no more than five hours of nursing per day.  Thus, according to the State, in order for Eric to obtain the relief he seeks, the State would have had to raise the age limit for participation in the MF/TD children program or raise the level of care covered by the corresponding program for adults. Neither modification, according to the State, was reasonable and

either modification would, in effect, compel the state to alter the substance of the services it provides to Medicaid recipients.

The *Radaszewski* court determined that a key premise of the state's argument was that private-duty nursing would, under no circumstances, be provided to Eric in the institutional setting. The court stated that this premise had not yet been established and that key factual issues existed as to whether Eric required continuous, one-on-one nursing care even if he were to be cared for in an institutional setting and as to whether a nursing home facility could in fact meet Eric's medical needs. As this court reads the *Radaszewski* opinion, it appears that the Court concluded that if the level of care which would have to be given in an institution in order for Eric to survive amounts to the equivalent of around-the-clock, private-duty nursing care, then Eric may well have a viable claim to receive private-duty nursing care at home because then, private-duty nursing care would present a reasonable alternative that would not require a fundamental alteration of the State's programs and services.

It appears that the same logic, analysis, and conclusion outlined in *Radaszewski* applies in the instant case. Devora's health is similarly fragile due to the myriad of documented medical conditions from which she suffers and clearly, she stands to suffer irreparable harm if the injunctive relief she seeks is denied. Given the representations before the Court at this stage of the litigation, Devora has demonstrated at the very least a greater than negligible chance of success on the merits as to her ADA and Rehabilitation

Act claims. For these reasons, the court has issued a temporary restraining order to preserve the status quo while the parties prepare for an evidentiary hearing.

The temporary restraining order issued August 25, 2006 shall expire at 2:30 PM September 4, 2006. Plaintiff's motion for preliminary injunction is hereby referred to Magistrate Judge Schenkier for hearing and a report and recommendation.

ENTER: August 25, 2006

*Ronald A. Guzman*
United States District Judge